**In re Louisa May JAAR, Debtor.**

**Bankruptcy No. 95–208–8G3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 30, 1995.

David W. Steen, Tampa, FL, for debtor.

Thomas F. Cox, St. Petersburg, FL, for movant.

Terry Smith, Trustee, Bradenton, FL. Marc Silverman, Trustee, Clearwater, FL.

## ORDER ON MOTION FOR RELIEF FROM STAY

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court to consider the Motion for Relief from Stay filed by Mitchell Pozin (the Creditor). In his Motion, the Creditor requests relief from the automatic stay to permit him to complete the foreclosure proceedings that had been commenced with respect to the Debtor's homestead property and also to permit him to take title to that property as a result of the completed foreclosure proceedings.

The facts underlying the Creditor's Motion are not in dispute. On May 13, 1988, the Debtor executed a mortgage in favor of Bailey Mortgage Company, and the Mortgage was duly recorded in the Public Records of Pinellas County, Florida. The property en-

cumbered by the mortgage is the Debtor's principal residence, located in St. Petersburg, Florida, described as:

Lot 8, Block 72, PLAN OF NORTH ST. PETERSBURG, according to the plat thereof as recorded in Plat Book 4, Page 64, Public Records of Pinellas County, Florida.

The mortgage ultimately was assigned to Amsouth Mortgage Company (Amsouth). In 1993, Amsouth filed a foreclosure action in the Circuit Court for Pinellas County, Florida, and a Final Judgment of Foreclosure was entered in the action in June of 1993. Amsouth subsequently assigned the judgment and the mortgage to the Creditor.

After a Chapter 13 case was filed, a plan confirmed, and the case dismissed for failure by the Debtor to perform under the terms of the plan, a foreclosure sale of the property was set by the state court. The foreclosure sale was ordered pursuant to the judicial sales procedure set out in section 45.031, Florida Statutes. The public sale was conducted on January 10, 1995, and the Creditor was the successful bidder at the sale. A certificate of sale was issued by the Clerk of the Circuit Court reflecting the sale of the property to the Creditor, and the certificate of sale was filed by the Clerk on January 10, 1995, at 11:17 a.m. The Debtor filed her voluntary petition under Chapter 13 of the Bankruptcy Code at 3:11 p.m. on the same day.

The Debtor asserts that she is entitled to cure the delinquency and reinstate the mortgage in accordance with the provisions of Chapter 13. The Creditor asserts that the Debtor's right to cure and reinstate the mortgage terminated prior to her filing the Chapter 13 Petition by virtue of the foreclosure sale of the property. The Creditor therefore further asserts that the Debtor is unable to provide for payment of his claim in her Chapter 13 plan, with the result that he is entitled to relief from the automatic stay for cause pursuant to Section 362(d) of the Bankruptcy Code. Consequently, the question in this case is whether the Debtor's right to cure the default and reinstate the mort-

gage had terminated as a result of the status of the foreclosure proceedings at the time that the Chapter 13 Petition was filed.

Section 1322 of the Bankruptcy Code contains both the mandatory and the permissive provisions with respect to Chapter 13 plans. Section 1322(b)(5) states that a plan may provide for the curing of any default within a reasonable time and the maintenance of payments on certain long-term secured claims. Applicable provisions of 11 U.S.C. § 1322, as amended by the Bankruptcy Reform Act of 1994,[1] provide:

§ 1322. Contents of plan.

.   .   .   .   .

(b) Subject to subsections (a) and (c) of this section, the plan may—

.   .   .   .   .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ...;

(3) provide for the curing or waiving of any default;

.   .   .   .   .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

.   .   .   .   .

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law ...

.   .   .   .   .

---

1. This case was filed on January 10, 1995, and is affected by provisions of the Bankruptcy Reform

Act of 1994, which became effective October 22, 1994.

■ Accordingly, a default in a home mortgage may be cured, and the mortgage reinstated, through a chapter 13 plan, until the residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.

Prior to the Bankruptcy Reform Act of 1994, there was not unanimity among courts as to the point in the foreclosure process at which a debtor lost the right to cure a default and reinstate a home mortgage under Chapter 13. Some courts held that a default could not be cured after the mortgagee had accelerated the mortgage note; some courts held that a default could not be cured after a foreclosure judgment had been entered; some courts held that a default could not be cured after a foreclosure sale had taken place; and some courts held that a debtor could cure a default even after a foreclosure sale had occurred if the right of redemption had not expired.

The most widely accepted view prior to the enactment of the Bankruptcy Reform Act of 1994 is set forth in the case of *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). In the *Glenn* case, the Sixth Circuit Court of Appeals held that the right to cure the default and reinstate the mortgage survived the acceleration of the debt and the entry of the foreclosure judgment, and extended until the sale of the property at the foreclosure sale.

... The event we choose as the cut-off date of the statutory right to cure defaults is the sale of the mortgaged premises. We pick this in preference to a number of other potential points in the progress of events ranging from the date of first default to the day the redemption period expires following sale. We do so for the following reasons, which admittedly may form a large target for criticism:

(a) The language of the statute is, to us, plainly a compromise, as we have earlier mentioned. Picking a date between the two extremes, is likewise a compromise of sorts.

(b) The sale of the mortgaged property is an event that all forms of foreclosure, however denominated, seem to have in common. Whether foreclosure is by judicial proceeding or by advertisement, and regardless of when original acceleration is deemed to have occurred, the date of sale is a measurable, identifiable event of importance in the relationship of the parties. It is at the heart of realization of the security.

(c) Although the purchaser at the sale is frequently the security holder itself, the sale introduces a new element—the change of ownership and, hence, the change of expectations—into the relationship which previously existed.

(d) The foreclosure sale normally comes only after considerable notice giving the debtor opportunity to take action by seeking alternative financing or by negotiation to cure the default or by taking advantage of the benefits of Chapter 13. Therefore, setting the date of sale as the cut-off point avoids most of what some courts have described as the "unseemly race to the courthouse." Concededly no scheme can avoid that possibility altogether, but the time and notice requirements incident to most sales at least provide breathing room and should deter precipitate action that might be expected if the cut-off date were measured by the fact of notice of acceleration or the fact of filing suit.

(e) Any earlier date meets with the complaint that the rights conferred by the statute upon debtors to cure defaults have been frustrated.

(f) Any later date meets with the objection that it largely obliterates the protection Congress intended for mortgagees of private homes as distinguished from other secured lenders.

(g) Any later date also brings with it the very serious danger that bidding at the sale itself, which should be arranged so as to yield the most attractive price, will be chilled; potential bidders may be discouraged if they cannot ascertain when, if ever, their interest will become finalized.

. . . . .

In summary, we hold that under 11 U.S.C. § 1322(b) a Chapter 13 debtor may cure a default on a mortgage on his princi-

pal residence even when the debt has been accelerated and a judgment of foreclosure has been entered provided that no foreclosure sale has taken place. Once the property has been sold, the right to cure the default and reinstate the terms of the mortgage under section 1322(b) ceases....

*In re Glenn,* 760 F.2d at 1435–1436, 1442.

Prior to the Bankruptcy Reform Act of 1994, courts in all districts in Florida had generally adopted the reasoning and conclusion of the Sixth Circuit in the *Glenn* case. *See In re Boromei,* 92 B.R. 516 (M.D.Fla. 1988),[2] *In re Related Partners Properties, Inc.,* 163 B.R. 213 (S.D.Fla.1993), and *In re Westmore,* 75 B.R. 110 (Bankr.N.D.Fla.1987). The date of the sale of the property was considered to be the date of the public sale, that is, the date of the public auction, and not the ultimate judicial approval of the sale or the subsequent formal passage of title. *See In re Campbell,* 82 B.R. 614 (Bankr.S.D.Fla. 1988).[3]

The Seventh Circuit Court of Appeals also selected the foreclosure sale as the termination point of the debtor's right to cure and reinstate in the case *Matter of Clark,* 738 F.2d 869 (7th Cir.1984), cert. denied, 474 U.S. 849 (1985). However, the Third Circuit Court of Appeals concluded that the debtor's right to cure was extinguished at the time of the foreclosure judgment. *See Matter of Roach,* 824 F.2d 1370 (3d Cir.1987).

Decisions of Bankruptcy Courts as well as Circuit Courts are catalogued in the case of *In re Ragsdale,* 155 B.R. 578 (Bankr. N.D.Ala.1993).

Section 1322(c)(1) was added to the Bankruptcy Code by Section 301 of the Bankruptcy Reform Act of 1994, which became effective October 22, 1994, and applies to bankruptcy cases commenced on or after that date, with exceptions which are not applicable here. *See* Section 702, Bankruptcy Reform Act of 1994. The legislative history of § 1322(c)(1) indicates that it is a codification of the position adopted by the *Glenn* court, at least in part:

> ... Until the Third Circuit's decision in Matter of Roach, 824 F.2d 1370 (3d Cir. 1987), all of the Federal Circuit Courts of Appeal had held that such right continues at least up until the time of the foreclosure sale. See In re Glenn, 760 F.2d 1428 (6th Cir.1985), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); Matter of Clark, 738 F.2d 869 (7th Cir.1984). The Roach case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy.
>
> This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would con-

---

**2.** Both parties in this case have cited *Boromei v. Sun Bank of Tampa Bay,* 92 B.R. 516 (M.D.Fla. 1988) to support their respective positions. The District Court in *Boromei* held that Chapter 13 Debtors should have the right to cure and reinstate their mortgage until the date of the foreclosure sale regarding the property. In *Boromei,* however, the bankruptcy petition was filed the day before the date of the scheduled foreclosure sale, so that the District Court was not required to determine the precise point in the foreclosure proceedings at which the sale is deemed to have occurred for purposes of Federal bankruptcy law. The District Court in *Boromei* did cite *Glenn* with favor, however, as well as the overall rehabilitative purpose of Chapter 13, and this Court's determination with respect to the defini-

tion of sale is consistent with the District Court's decision.

**3.** The district court in *Related Partners* refers to an unpublished decision of a bankruptcy court in the Southern District of Florida which addressed the issue of whether a debtor can cure defaults and reinstate a mortgage when the petition is filed after the foreclosure sale but before the issuance of the certificate of title, where the purchaser at the foreclosure sale is the mortgagee and not a third party. The district court, however, did not need to resolve the question, since in that case the petition was filed after the certificate of title had been issued.

tinue to enjoy such rights in bankruptcy....

HR Rep. 103–834, 103rd Cong., 2nd Sess. 33–34 (Oct. 4, 1994); 140 Cong.Rec. H10769 (Oct. 4, 1994).

■ The resolution of this case depends on when the residence is "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law," and whether this provision of the Bankruptcy Code added by the Bankruptcy Reform Act of 1994 requires a different result than that applied by the bankruptcy courts in Florida prior to the amendments. This case also requires a determination of the exact point the property is sold at the foreclosure sale.

Although the new § 1322(c)(1) appears to codify the holding of *Glenn*, to the extent that *Glenn* avoided state law considerations (*see In re Campbell, supra* ) the revision may reintroduce them.[4]

Accordingly, the Court examines state law. Relevant portions of the judicial sales procedure in Florida are set forth in the following provisions of the Florida Statutes:

45.031 Judicial sales procedure.—In any sale ... the following procedure may be followed ...:

(1) SALE BY CLERK.— ... the court shall direct the clerk to sell the property at public sale on a specified day.... Any sale held more than 35 days after the final judgment or order shall not affect the validity or finality of the final judgment or order or any sale held pursuant thereto.... Notice of sale shall be published.... The notice shall contain:

.        .        .        .        .

(b) The time and place of the sale.

.        .        .        .        .

(2) DEPOSIT REQUIRED.—At the time of the sale, the successful high bidder shall post with the clerk a deposit.... The deposit shall be applied to the sale price at the time of payment....

(3) CERTIFICATION OF SALE.—After a sale of the property the clerk shall promptly file a certificate of sale ... in substantially the following form:

CERTIFICATE OF SALE

... the property was offered for public sale.... The highest and best bid received for the property was submitted by _____, to whom the property was sold. The proceeds of the sale are retained for distribution in accordance with the order or final judgment....

(4) CERTIFICATE OF TITLE.—If no objections to the sale are filed within 10 days after filing the certificate of sale, the clerk shall file a certificate of title ... in substantially the following form:

CERTIFICATE OF TITLE

The undersigned clerk of the court certifies that he executed and filed a certificate of sale ... and that no objections to the sale have been filed within the time allowed for filing objections.

The following property ... was sold to....

(5) CONFIRMATION.—When the certificate of title is filed the sale shall stand confirmed, and title to the property shall pass to the purchaser named in the certificate without the necessity of any further proceedings or instruments.

(6) RECORDING.—The certificate of title shall be recorded by the clerk.

(7) DISBURSEMENTS OF PROCEEDS.—On filing a certificate of title the

---

**4.** To some extent, *Glenn* applies state law because it focuses on the foreclosure sale, which is conducted in accordance with state law. To some extent, *Glenn* avoids state law because it does not allow a debtor to redeem pursuant to any post-sale right of redemption. The question of whether or not Congress intended to allow debtors to cure and reinstate or to redeem during a post-sale redemption period arises under the new statute. The legislative history indicates that it might have: "... if the State provides the debtor more extensive 'cure' rights (through, for example, some later redemption period,) the debtor would continue to enjoy such rights in bankruptcy...." The provisions of the statute may indicate otherwise, however, since it specifies: "sold at a foreclosure sale *that is conducted in accordance with applicable nonbankruptcy law*" (emphasis supplied) rather than "sold at a foreclosure sale in accordance with applicable nonbankruptcy law."

clerk shall disburse the proceeds of the sale ... and shall file a report of the disbursements ... in substantially the following form: ... If no objections to the report are served within 10 days after it is filed, the disbursements by the clerk shall stand approved as reported....

(8) VALUE OF PROPERTY.—The amount of the bid for the property at the sale shall be conclusively presumed to be sufficient consideration for the sale. Any party may serve an objection to the amount of the bid within 10 days after the clerk files the certificate of sale.... Service of objections to the amount of the bid does not affect or cloud the title of the purchaser in any manner. If the case is one in which a deficiency judgment may be sought and application is made for a deficiency, the amount bid at the sale may be considered by the court as one of the factors in determining a deficiency under the usual equitable principles.

Prior to 1971, mortgagors in Florida had the right to redeem from foreclosure judgments after the date of the public sale up to the date the sale was completed by the order confirming the sale. Although the statute providing the judicial sale procedure did not expressly mention redemption, courts had held that there was an inherent right of redemption evolving from the common law which could be exercised at any time prior to entry of an order confirming a sale. *See Allstate Mortgage Corporation of Florida v. Strasser*, 286 So.2d 201 (Fla.1973). This equitable interest of the mortgagee was the equity of redemption. *See* Thomas E. Baynes, Jr., *Mortgages: The Law in Florida*, Ch. 10 (1993).

In 1971, the Florida legislature added an amendment to the statute which provided: "In cases when a person has an equity of redemption, the court shall not specify a time for the redemption, but the person may re-deem the property at any time before the sale." The Florida Third District Court of Appeals, affirmed by the Florida Supreme Court, concluded that the amendment was in derogation of the common law, must be strictly construed, and would not be interpreted to displace the common law further than clearly necessary.[5] The court held that this amendment to the statute did not clearly change the prior common law rule because the sale did not take place until ownership of the property was transferred, and according to § 45.031(3), Fla.Stat., the transfer takes place ten days after the day of the sale, upon no objections being filed thereto and issuance of the certificate of title. *See Allstate Mortgage Corporation of Florida v. Strasser, supra.*[6]

In 1993, the Florida legislature amended the statute to specifically provide that the right of redemption terminates with the filing of the certificate of sale, unless the foreclosure judgment specifies a later time:

45.0315 Right of redemption.—At any time before the later of the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure, the mortgagor or the holder of any subordinate interest may cure the mortgagor's indebtedness and prevent a foreclosure sale by paying the amount of moneys specified in the judgment, order, or decree of foreclosure.... Otherwise, there is no right of redemption.

A mortgagor's equity of redemption now expires with the filing of the certificate of sale. Objections may be made to the regularity of the sale, or the amount of the deficiency, but after the filing of the certificate of sale the mortgagor no longer has the ability to redeem the property. Any objection to the amount of the bid (which must be served within 10 days after filing of the certificate of

---

**5.** "The courts will infer such a statute was not intended to make any alteration other than was specified and plainly pronounced in clear unequivocal terms." *Allstate*, 286 So.2d at 202.

**6.** Notwithstanding *Allstate*, bankruptcy courts in Florida have considered the date of the foreclosure sale as the date of the public bidding. "The term 'sale' ordinarily denotes the auction event, not the ultimate judicial approval of the sale or the subsequent formal passage of title. The Florida statute recognizes this distinction by providing a certificate of sale immediately following the auction, and a certificate of title after all objections are finally resolved and the right of redemption has expired." *In re Campbell, supra.*

sale, prior to the filing or recording of the certificate of title), does not affect or cloud the title of the purchaser in any manner. The certificate of sale must be set aside for the mortgagor to have any right to acquire the property. Accordingly, for the purpose of the mortgagor/debtor paying off the mortgage, through a chapter 13 plan or otherwise, the residence has been sold at the foreclosure sale at the time of the filing of the certificate of sale.

Using the filing of the certificate of sale as the point in Florida where a debtor's right to cure defaults and reinstate a mortgage terminates is consistent with the provisions of the new § 1322(c)(1), consistent with the reasoning of *Glenn,* and consistent with the reasoning of the bankruptcy and district courts in Florida as expressed in *Boromei, Related Partners,* and *Westmore:*

1. This is the point under state law when the mortgagor's equity of redemption is divested and the mortgagor's ability to reacquire the property terminates. Even objections to the amount of the sale do not affect the purchaser's title.[7,8]

2. Sections 1322(b)(2) and 1322(c)(1) strike a balance. The rights of home mortgagees cannot be modified, but despite this a debtor may cure and reinstate a mortgage until the property is sold. Extending the mortgagor's ability to reinstate the mortgage past the last point when under state law the mortgagor may redeem the property from the foreclosure would frustrate this balance.

3. This is the point where third parties may become involved. A mortgagee is a consensual lender. Requiring the mortgagee to accept a cure through a chapter 13 plan does not alter the mortgagee's basic character as a lender. A purchaser at a foreclosure sale must pay cash, and becomes an owner. He or she may be purchasing the property for development, for investment, for management, for ownership, or for any number of reasons. The possibility that these reasons may be frustrated by the requirement of becoming a non-consensual lender would have a substantial chilling effect on foreclosure sales, which is ultimately detrimental to both the mortgagee and the mortgagor.

4. There is no surprise. There need be no race to the courthouses. A foreclosure action must be prosecuted, a judgment must be obtained, and the sale must be set and advertised. The mortgagor has a considerable amount of time to seek refinancing, negotiate, defend the foreclosure, and decide whether or not to seek the protections of bankruptcy.

5. This is a clear, identifiable point in the foreclosure process. Date and time stamps of public officials show the time of filing of a certificate of sale, and the time of filing of a petition in bankruptcy.

6. In Florida, the filing of the certificate of sale, rather than the acceptance of the high bid at the public bidding, is the conclusion of the foreclosure sale. This is the clerk's certificate that the sale has been advertised, the public bidding conducted, and the proceeds of the sale retained for distribution in accordance with the court's order. It is also the point in the Florida foreclosure process which marks the beginning of the period to object to the sale and the beginning of the period to object to the value established by the sale, as well as the expiration of the right of redemption.

Accordingly, this Court concludes that in Florida a residence is sold at a foreclosure sale within the meaning of Section 1322(c)(1) at the time that the certificate of sale is filed by the clerk of the state court. In this case, the certificate of sale was filed before the Debtor filed her bankruptcy petition, and the

---

7. With the 1993 change in Florida law, there is no need to examine whether the provision "sold at a foreclosure sale that is conducted in accordance with state law" refers only to the public sale, or to the expiration of the right of redemption. While this question may arise in other states, it is no longer a question in Florida. Whether or not this provision of state law applies to mortgages entered prior to its effective date is a question which has not been raised.

8. If an objection to the sale has been filed by the mortgagor in state court, and the sale is set aside, then the mortgagor may use Chapter 13 to cure the defaults. Questions regarding the regularity of the sale seem more appropriate for the state court, under whose supervision the sale was conducted, than the bankruptcy court.

Debtor is not able to cure and reinstate or redeem her mortgage through her Chapter 13 Plan.

Therefore,

**IT IS ORDERED** that:

1.  The Motion for Relief from Stay filed by the creditor, Mitchell Pozin, is granted.

2.  The creditor is entitled to proceed with its in rem remedies against the Debtor's principal residence, located in St. Petersburg, Florida, described as:

> Lot 8, Block 72, PLAN OF NORTH ST. PETERSBURG, according to the plat thereof as recorded in Plat Book 4, Page 64, Public Records of Pinellas County, Florida.

3.  The relief granted here permits the creditor to take action against property only and does not permit the creditor to seek or obtain in personam relief against the Debtor.