**In re Shirley SIMMONS, Debtor.**

**Bankruptcy No. 96–20102 (NLW).**

United States Bankruptcy Court,
D. New Jersey.

Nov. 1, 1996.

Brian R. Quentzel, Englewood, NJ, for Debtor Shirley Simmons.

Michael S. Ackerman, Zucker, Goldberg, Becker & Ackerman, Mountainside, NJ, for The Dime Savings Bank of New York.

## OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

In the matter before the court the debtor filed for Chapter 13 relief after a foreclosure sale was conducted, but before the expiration of her right of redemption and before delivery of the deed. The debtor desires to cure payment defaults and to reinstate her mortgage. The secured creditor has moved for relief from the automatic stay on the basis that under 11 U.S.C. § 1322(c)(1) the right to cure expired on the date that the property was sold to the highest bidder at the foreclosure sale. As explained below, the court finds that when a sheriff sells property to the highest bidder at a sale conducted in accordance with applicable New Jersey statutes and court rules, a foreclosure sale has been conducted within the meaning of § 1322(c)(1), and the debtor may not thereafter cure defaults and reinstate the mortgage pursuant to provisions of Chapter 13 of the Bankruptcy Code.

The court has jurisdiction pursuant to 11 U.S.C. § 1334 and the Standing Order of Reference entered by the United States District Court for the District of New Jersey on July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## FACTS

In December, 1988, the debtor Shirley Simmons ("Simmons" or "debtor") executed a note in favor of The Dime Real Estate Services–New Jersey, Inc. ("The Dime") for the sum of $211,500. To secure that obligation the debtor also executed a mortgage in favor of The Dime. After Simmons defaulted in payment on the note The Dime commenced a foreclosure action in May, 1994. A final judgment of foreclosure in the amount $215,988.84 and a writ of execution was issued on November 1, 1994. The Sheriff of Bergen County conducted a foreclosure

sale on December 27, 1995, at which the Debtor's residence was sold to The Dime for the sum of $100.00. On January 5, 1996, during the ten day period in which the debtor could exercise her right of redemption, Simmons commenced the instant Chapter 13 case.

The debtor interprets § 1322(c)(1) to permit her to cure her payment delinquencies and reinstate her mortgage under other provisions of § 1322. She contends that the foreclosure sale was not complete at the point that she commenced her case because her right to redeem had not expired, and the Sheriff had not delivered the deed to the purchaser.

The Dime rejects the debtor's reasoning. It asserts that the plain language of Code § 1322(c)(1) makes it clear that a debtor's right to cure terminates on the date that the property is sold at a foreclosure sale auction. Like the debtors, it also asserts that the legislative history supports their application of the statute. Finally, The Dime contends that under New Jersey law, when the gavel falls at a sheriff's sale, all of a mortgagor's rights in the property are terminated. In its view of New Jersey law, after the foreclosure auction sale, the mortgagor can only defeat the sale either (i) by exercising the right of redemption within ten days after the sale, or (ii) by succeeding on an objection to the sale made pursuant to N.J. Ct. Rule 4:65–5. The Dime agrees that the debtor's right of redemption continues in the bankruptcy case and may be extended for an additional 60 days by operation of 11 U.S.C. § 108(b) if a bankruptcy is filed before expiration of the redemption period. However, it asserts that the right of redemption does not provide the debtor with a basis to exercise any cure rights under § 1322(b)(3) or (5).

### DISCUSSION

■ The precise issue before the court is the one framed by the opposing arguments of the parties: whether under section 1322(c)(1) a debtor's right to cure defaults and reinstate a mortgage terminates on the date that the debtor's residence is sold at the foreclosure sale, or when the sheriff finally delivers the deed to the purchaser at the foreclosure sale.

I. *The best construction of the statute results in termination of the debtor's cure rights on the date of foreclosure sale*

Determination of this question requires that the court first examine the language of § 1322(c)(1). *Heverly v. Commissioner of Internal Revenue,* 621 F.2d 1227, 1232 (3d Cir.1980) (construction of a statute must begin with the language of that statute). Section 1322(c)(1) was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994. Pub.L. No. 103–394, § 301, 108 Stat. 4106, 4131 (1994) ("Reform Act"). The Reform Act provides in pertinent part:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.

11 U.S.C. § 1322(c)(1).

Since passage of the Reform Act a handful of reported decisions have addressed the construction of § 1322(c)(1). The court in *In re Sims,* 185 B.R. 853, 864–65 (Bankr.N.D.Ala. 1995) found the statutory language clear and unambiguous in its direction to look to state law for a determination as to when a residence "is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." The court in *In re McEwen,* 194 B.R. 594 (N.D.Ill.1996) apparently also found the statute unambiguous. Without any discussion of the statutory language, it found that application of § 1322(c)(1) required the court to focus upon what it means to conduct a foreclosure sale in accordance with Illinois law. 194 B.R. at 596. On the other hand, the courts in *In re Ross,* 191 B.R. 615, 618 (Bankr.D.N.J.1996), and *In re Jaar,* 186 B.R. 148, 151 (Bankr.M.D.Fla. 1995), find that the statutory language is ambiguous, and they resort to an examination of legislative history as well as state law in order to construe § 1322(c)(1). The court in *In re Barham,* 193 B.R. 229, 231 (Bankr. E.D.N.C.1996), implicitly finds ambiguity in

the statute, inasmuch as it looks to legislative history as well as North Carolina foreclosure law to determine when the debtor's ability to cure terminates. 193 B.R. at 232.

The court agrees with *Ross* and *Jaar* that the meaning of the statute is not readily discerned from the language of the statute. The modification of the term "foreclosure sale" by the phrase "conducted in accordance with applicable nonbankruptcy law" arguably creates ambiguity in that it is not readily apparent whether Congress intended the phrase to apply only to the event of sale, or to the entirety of the sale process, including the giving of a deed. *See U.S. v. Gibbens*, 25 F.3d 28, 34 (1st Cir.1994) (a statute is ambiguous if it reasonably can be read in more than one way).

■ If Congress intended that the auction sale be the decisive event, then section 1322(c)(1) merely requires that the scheduling of the sale and bidding at the foreclosure sale be done in accordance with the applicable state foreclosure law. On the other hand, if Congress intended that a debtor's cure right continues until all steps are completed in the foreclosure sale process, then applicable state foreclosure law must be examined to determine when the sale is complete.[1]

In light of the apparent ambiguity created by the statutory language, the court may consider both the available legislative history and case authority that existed at the time of enactment of the statute. Both Simmons and The Dime claim that the legislative history favors their interpretation.

In support of her position, the debtor points to the following:

Section 1322(b)(3) and (5) of the Bankruptcy Code permit a debtor to cure defaults in connection with a Chapter 13 plan, including defaults on a home mortgage loan. Until the Third Circuit's decision in *Matter of Roach*, 824 F.2d 1370 (3d Cir.1987), all of the Federal Circuit Courts of Appeal had held that such right continues at least up until the time of the foreclosure sale. See *In re Glenn*, 760 F.2d 1428

(6th Cir.1985), *cert. denied*, 474 U.S. 849 [106 S.Ct. 144, 88 L.Ed.2d 119] (1985); *Matter of Clark*, 738 F.2d 869 (7th Cir. 1984), *cert. denied*, 474 U.S. 849 [106 S.Ct. 144, 88 L.Ed.2d 119] (1985). The *Roach* case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy.

*This section of the bill safeguards a debtor's rights in a Chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy. The changes made by this section, in conjunction with those made in section 305 of this bill, would also overrule the result in First National Fidelity Corp. v. Perry, 945 F.2d 61 (3d Cir.1991) with respect to mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the plan is due. In that case, the Third Circuit held that subsequent to foreclosure judgment, a Chapter 13 debtor cannot provide for a mortgage debt by paying the full amount of the allowed secured claim in accordance with Bankruptcy Code section 1325(a)(5), because doing so would constitute an impermissible modification of the mortgage holder's right to immediate payment under section 1322(b)(2) of the Bankruptcy Code.*

H.R.Rep. No. 835, 103rd Cong., 2d Sess. 52 (Oct. 4, 1994) (emphasis added).

Based on the foregoing comments, Simmons contends that Congress intended that debtors are to be permitted to cure home mortgage defaults until the foreclosure sale process is completely finalized, and urges the court to join the *Ross* court in its holding

---

1. There is no federal foreclosure law. *West End Associates, L.P. v. Sea Green Equities*, 166 B.R. 572, 578 (D.N.J.1994). Thus, to determine when

a mortgagee has foreclosed a debtor-mortgagor's interest in real property, the court must look to state law.

that a foreclosure sale is not complete under New Jersey law until the sheriff delivers the deed to the successful purchaser.[2] 191 B.R. at 621.

The Dime counters that the legislative history cited above merely reflects Congressional intent to overrule the Third Circuit's ruling in *Matter of Roach*, 824 F.2d 1370 (3d Cir.1987), so that the right to cure home mortgage defaults survives entry of foreclosure judgment. As additional support for its position The Dime offers the comments of Senator Grassley in support of passage of the Reform Act:

> MR. GRASSLEY: Mr. President, I am pleased to support H.R. 5116. This bill represents the collective wisdom of the Senate and the House concerning needed bankruptcy reforms. As an original co-sponsor of the Senate-passed bill, S.540, I would have its enactment.
>
> Nonetheless, compromise is the key to enact just about anything, I can support this compromise bill as a good effort to improve our Nation's bankruptcy laws. Indeed, several of the provisions of the House bill were an improvement on the Senate language.
>
> At this time, I would like to address a number of the issues covered by this legislation.
>
> . . . . . .
>
> Title III of the bill will assist homeowners. Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy court has ordered a foreclosure sale. There may be several months between the court order and the foreclosure sale. Section 301 will preempt conflicting State laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs.

140 Cong.Rec. S14462 (October 6, 1994).

█ The Dime claims that when read with the rest of the legislative history, Senator Grassley's comments make it plain that the drafters of the Reform Act intended to create a "bright line" federal standard that gives debtors in all jurisdictions (particularly those jurisdictions which followed the *Roach* decision) the right to cure defaults and reinstate mortgages until the foreclosure sale is conducted. The court is persuaded that The Dime's reading of section 1322(c)(1) is most consistent with the legislative history of the Reform Act, existing Bankruptcy Code policy, circuit court case law, and a natural reading of the statutory language. This court thus concurs with the holdings reached in *In re Ziyambe*, 200 B.R. 790 (Bankr.D.N.J. 1996), and *In re Little*, 201 B.R. 98 (Bankr. D.N.J.1996), that under section 1322(c)(1) a debtor's cure right terminates on the date of the foreclosure sale.

When the House Report and Senator Grassley's comments are read in conjunction with the language of section 1322(c)(1) it is apparent that the phrase "sold at a foreclosure sale" refers to the event of sale. The House Report commentary on section 1322(c) begins with its observation that until the *Roach* decision, all Circuit Courts of Appeal had found that a debtor's right to cure continued at least until the *time* of the foreclosure sale. The House Report further comments that the *Roach* decision conflicted with the bankruptcy "fresh start" policy because it held that the debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale. The use of the term foreclosure sale in this context is most sensibly understood to refer to the date of sale of the residence.

The first sentence of the very next paragraph continues as follows: "This section of the bill safeguards a debtor's rights in a Chapter 13 case by allowing the debtor to cure home mortgage defaults *at least through completion of a foreclosure sale under applicable nonbankruptcy law*." Many view this sentence as a congressional statement that Congress did not intend the foreclosure sale date to be the point at which the debtor's right to cure ends. Rather, they conclude that the foregoing language means that Congress intended that in applying sec-

---

**2.** *In re Macavia*, No. 95–34118 (Bankr.D.N.J. Oct. 19, 1995) (Ferguson, J.), also holds that a foreclosure sale is not final under New Jersey law until the deed is delivered by the sheriff.

tion 1322(c)(1) the court must look to state law to determine when a foreclosure sale is completed. A leading bankruptcy treatise opines

> It may well be significant that Congress did not say that the debtor may cure "until the sale," or "until the date of the foreclosure sale," indicating that the completion of the sale might be on a later date than the date of the auction.

5 Collier on Bankruptcy, ¶ 1322–14A at 1322–48 (15th ed. 1996).

However, this court finds that the treatise places more interpretive weight on this single sentence in the House Report than it can bear. When the sentence is read in the context of the full House Report it is equally possible, and more plausible, to understand the reference to "completion of a foreclosure sale" to mean the conclusion of the sale of the residence by auction or such type of sale as is authorized by applicable nonbankruptcy law. Moreover, Senator Grassley's comments are only sensibly understood as referencing the point at which the residence is sold to another party.

Additionally, the term "foreclosure sale" is a legal term of art, which has acquired a generally accepted meaning as evidenced by the definition set forth in Black's Law Dictionary:

> A sale of mortgaged property to obtain satisfaction of the mortgage out of the proceeds, whether authorized by a decree of the court or by a power of sale contained in the mortgage.

Black's Law Dictionary 582 (5th ed. 1979). The term "foreclosure sale" is not defined either in section 1322(c)(1) or any other section of the Bankruptcy Code. Nor does the legislative history contain any discussion of the meaning of the term. Thus, in the absence of any indication to the contrary, it is reasonable to assume that Congress used the term foreclosure sale in its customary sense. *See United Technologies Corp. v. Browning–Ferris Industries,* 33 F.3d 96, 99 (1st Cir. 1994) (legal terms used in framing a statute are ordinarily presumed to have been intended to convey their customary legal meaning).

Two additional canons of statutory construction illuminate the meaning of the term and section 1322(c)(1). Firstly, it is generally accepted that in construing a statute, courts must give effect, if possible, to every word Congress used. *In re Cohn,* 54 F.3d 1108, 1115 (3d Cir.1995). Applying this canon to the phrase "until such residence is sold at a foreclosure sale," and giving every word its due, it is amply clear that "sold at a foreclosure sale" refers to the event of sale. Secondly, the "doctrine of the last antecedent" provides that qualifying words and phrases are to be applied to the immediately preceding words or phrase, rather than more remote ones. *Resolution Trust Corp. v. Nernberg,* 3 F.3d 62, 65 (3d Cir.1993) (citing to *Azure v. Morton,* 514 F.2d 897, 900 (9th Cir.1975)). Applying this second rule to the phrase "that is conducted in accordance with applicable nonbankruptcy law" (which follows the term "foreclosure sale"), it is equally evident that this phrase modifies the term "foreclosure sale" and simply requires that the sale be held in a procedurally correct manner. Consequently, the most common sense reading of section 1322(c)(1) is that the right to cure defaults terminates when the residence is sold (i.e. has been purchased) at a foreclosure sale that is scheduled and held (i.e., conducted) in a manner required by applicable state law.

This understanding of section 1322(c)(1) also squares with the holdings of the various U.S. Courts of Appeal which had addressed the issue as of the time that Congress was considering passage of the Reform Act. Indeed, the House Report acknowledges the rulings and specifically cites to *In re Glenn,* 760 F.2d 1428 (6th Cir.1985) and *Matter of Clark,* 738 F.2d 869 (7th Cir.1984).

Finally, understanding section 1322(c)(1) to establish the date of sale of a debtor's residence as the point at which the cure right terminates fulfills the dual policies that underlie the section. It affords the debtor a reasonable opportunity to retain her residence by filing a Chapter 13 petition and proposing a plan to cure arrears and reinstate the mortgage. By the time a foreclosure sale is scheduled the debtor has been

served with the complaint initiating the foreclosure action, served with the judgment stating the amount due, and served with a notice of sale advising of the date, time, and place of sale. Such a cutoff point also recognizes the favored position Congress bestowed upon home mortgage lenders in other subsections of 1322. A uniform termination point for a debtor's right to cure benefits such lenders in that it introduces certainty and finality. Accordingly, this "bright line" approach strikes a fair balancing of the rights of debtors and home mortgage lenders.

II. *Under New Jersey law a residence is sold at foreclosure sale when the highest bid is declared*

■ Though the court does not consider it necessary, an examination of New Jersey law also leads this court to conclude that a residence is sold at a foreclosure sale when the sheriff declares that the property is sold to a high bidder. Thus, the debtor's right to cure terminates at that point.

Under New Jersey law, the sheriff is the proper party to whom a writ of execution is delivered for the purpose of levying upon and selling the property subject to the foreclosure judgment. As set forth in *Investors and Lenders v. Finnegan*, 249 N.J.Super. 586, 592, 592 A.2d 1244 (Ch. Div.1991):

> In conducting an execution sale, a sheriff is empowered to act as a public auctioneer. The purpose of the sale is to obtain the highest price for the benefit of the foreclosing mortgagee, other junior lienholders and perhaps, the owner-mortgagor.... As with any auction, the high bidder is awarded the property based upon his promise to pay and the making of the required deposit as security for compliance. (citations omitted).

■ The successful purchaser at a foreclosure sale in New Jersey acquires equitable title to the real property as a consequence of his high bid. *Union Building & Loan Ass'n of Camden v. Childrey, et al.*, 97 N.J.Eq. 20, 24, 2 N.J.Misc. 567, 571, 127 A. 253 (Ch. 1924); *Development Building & Loan Ass'n of Camden v. Nurock et ux.*, 10 N.J.Misc. 23, 26, 157 A. 452, 454 (1931); *Cropper v. Brown*, 76 N.J.Eq. 406, 414–15, 74 A. 987, 991 (Ch. 1909). The equitable title acquired by a purchaser at a foreclosure sale is subject to defeasance only if an objection to sale made pursuant to New Jersey Court Rule 4:65–5 is sustained, or pursuant to *Hardyston National Bank v. Tartamella*, 56 N.J. 508, 267 A.2d 495 (1970), the foreclosed mortgagor exercises the right of redemption within ten days after the sale. *See also Union County Savings Bank v. Johnson*, 210 N.J.Super. 589, 594, 510 A.2d 288 (Ch. Div.1986) (unless proper objection is made before delivery of the deed a buyer's equitable title is indefeasible).

■ In order to set aside a judicial sale there must be a showing of fraud, accident, surprise or mistake, irregularities in the sale and the like. *East Jersey Savings and Loan Association v. Shatto*, 226 N.J.Super. 473, 476, 544 A.2d 899 (Ch. Div.1987) (citing *Karel v. Davis*, 122 N.J.Eq. 526, 528, 194 A. 545 (E. & A.1973)); *Bassford v. Trico Mortgage Co., Inc.*, 273 N.J.Super. 379, 385, 641 A.2d 1132 (Law Div.1993). In the absence of such grounds a purchaser will not be relieved of his bid. *Froehlich v. Walden*, 66 N.J.Super. 390, 395–96, 169 A.2d 204 (Ch. Div.1961) (bidder's mistake flowing from his own culpable negligence insufficient); *Cropper v. Brown*, 76 N.J.Eq. at 422–23, 74 A. 987 (purchaser not relieved of bid even though premises destroyed by fire immediately following sale). Moreover, in the absence of a reason to set a sale aside, the purchaser can compel conveyance by means of specific performance. *Union Building & Loan Ass'n v. Childrey*, 2 N.J.Misc. at 571, 127 A. 253.

■ As described at great length in *Cropper v. Brown*, these rights and obligations of a purchaser arise at the time of sale and result from what amounts to a contract between the purchaser and the judicial officer. 76 N.J.Eq. at 412, 74 A. 987. Accordingly, the court concluded that the delivery of the deed is a mere ministerial act which is not the substantial part of the judicial sale, and, when given, relates back to the sale. 76 N.J.Eq. at 417, 74 A. 987. The court reviewed case authority to the contrary as well,

but did not find it well-supported by precedent.

The analysis performed by the court in *Cropper* is persuasive. Vice Chancellor Garrison reasoned as follows:

> By what seems to me to be a perfect analogy, it must therefore be held that when this legal agent, namely, the judicial officer, observing proper legal formalities, at a public sale strikes off the property to a purchaser, who thereupon signs the conditions of sale, thereby entering into a contract to purchase the premises named at the price named, the situation is exactly the same as if the contract were between private parties. The sheriff is vested by law with the power, on behalf of the persons against whom he holds the writ, to sell the property. This he does, and a written contract satisfying the statute of frauds is then made. I cannot perceive any reason why the same principles should not control the parties with respect to this contract as would control private parties voluntarily entering into a similar one. Nor can I perceive why, when the deed which judicial officer subsequently gives is delivered, it should not relate back to the time of the contract which undoubtedly, in my view, is the substantial thing in the transaction. The fact that the deed is not to be delivered at once, and that, in the meantime, under the law, the purchaser is not entitled to possession and is not entitled to possession until he secures his deed, does not affect the situation as equity views it.

76 N.J. Equity at 414–15, 74 A. 987.

 In light of the foregoing authority, it appears to the court that after a foreclosure sale a purchaser has largely acquired all of the rights and liabilities of ownership by virtue of having equitable title. All that remains to be conveyed is legal title, which is held in trust until delivery of the deed. Accordingly, the sale is final, but subject to defeasance by a proper objection to sale or redemption by the debtor within ten days of the sale. Nothing in the *Hardyston* decision dictates a different result.

New Jersey does not have a statutorily created right of redemption. Until resolved by the *Hardyston* decision it was not clear that a mortgagor had a right of redemption after the foreclosure sale was held. The *Hardyston* court reviewed the conflicting cases and noted that the case supplied the legalisms for framing the issue before it, but failed to provide the answer. 56 N.J. at 513, 267 A.2d 495. The court thereupon stated that the question is one of policy, and that because the right of redemption is a historically favored right, the right should continue after the foreclosure sale. 56 N.J. at 513, 267 A.2d 495. The court concluded that the mortgagor should be able to redeem within the ten day period fixed by R. 4:65–5 for objections to sale and until an order confirming the sale of objections were filed under the rule. *Id.* Thus, nothing in *Hardyston* suggests that a sale is not final at the conclusion of the auction. *Hardyston* merely affords a foreclosed mortgagor the ability to defeat an otherwise final sale by exercising a right of redemption within ten days after sale, or until an order confirming the sale if objections are filed under R. 4:65–5.

 In the matter *sub judice*, the debtor filed her Chapter 13 case after the foreclosure sale, but before expiration of the ten day period provided in R. 4:65–5. It has been held that the mere filing of a Chapter 13 petition does not constitute an objection to sale under R. 4:65–5. *Union County Savings Bank v. Johnson*, 210 N.J.Super. 589, 594, 510 A.2d 288 (Ch. Div.1986). Thus, by commencement of the case, the debtor merely extended the state law time period for redemption by sixty days. 11 U.S.C. § 108(b); *In re Roach*, 824 F.2d 1370, 1372 n. 1 (3d Cir.1987).

## CONCLUSION

As set forth at greater lengths above the court finds that the sale of the debtor's residence at a foreclosure sale conducted in accordance with New Jersey law terminated the debtor's right to cure mortgage arrears and reinstate her mortgage. The commencement of her Chapter 13 case served only to extend her state law right of redemption an additional sixty days by operation of 11 U.S.C. § 108(b). Because the debtor cannot

confirm a plan that cures the mortgage defaults, The Dime is entitled to relief from the automatic stay.