**In re Jonathan HRIC and Caren Hric, Debtors.**

**Bankruptcy No. 96–39717.**

United States Bankruptcy Court, D. New Jersey.

April 22, 1997.

Joan S. Lavery, Hackettstown, New Jersey, for Debtors.

Susan P. Anderson, Budd, Larner, Gross, Rosenbaum, Greenberg and Sade, P.C., Cherry Hill, New Jersey, for Federal National Mortgage Association.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by Federal National Mortgage Association

("FNMA") to vacate the automatic stay and for prospective relief to prevent future abusive bankruptcy filings. The debtors, Jonathan and Caren Hric (hereinafter the "debtors"), oppose the motion. The primary issue is whether a foreclosure sale in New Jersey occurs for the purposes of 11 U.S.C. § 1322(c)(1) when the sale is conducted or when the sheriff's deed is delivered. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). The following shall constitute the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

On November 6, 1996 (hereinafter the "petition date"), the debtors filed a petition for relief under chapter 13 of title 11, United States Code (hereinafter the "Bankruptcy Code" or "Code"). The following series of events preceded the debtors' bankruptcy filing and gave rise to the instant dispute.

On July 30, 1990 the debtors executed and delivered to the Huntington Mortgage Company a note in the principal sum of $95,000 which was secured by a mortgage on the debtors' residence (hereinafter the "property"). On August 31, 1990, by written assignment, the Huntington Mortgage Company assigned the note and mortgage to FNMA. On December 1, 1994 the debtors defaulted on the note and on June 27, 1995 FNMA commenced a foreclosure action in the Superior Court of New Jersey (hereinafter the "Superior Court"). On September 7, 1995 the Superior Court entered a judgment of foreclosure and the property was subsequently advertised for sale scheduled for November 27, 1995. On November 22, 1995 the debtors filed their first petition for relief under chapter 13 of the Bankruptcy Code.

On June 4, 1996, after the debtors failed to make payments to FNMA pursuant to a consent order between the parties, the court entered an order vacating the stay. The foreclosure sale originally scheduled for November 1995 was rescheduled and then further adjourned to October 28, 1996, on which date FNMA purchased the debtors' property for $100. On October 31, 1996 the debtor's initial bankruptcy case was dismissed. Then,

on November 6, 1996 the debtors filed their second chapter 13 petition commencing the instant bankruptcy case. No sheriff's deed was delivered to FNMA before the petition date. As of January 6, 1997, which is 60 days after the petition date, the debtors had not exercised their state law right to redeem the property. The debtors have attempted to make postpetition payments on the note and propose to cure their default through their chapter 13 plan. FNMA has returned the debtors' payments. On February 5, 1997, FNMA filed the instant motion seeking relief from the automatic stay for the debtors' failure to redeem the property within the statutorily prescribed time and to prevent future abusive bankruptcy filings by the debtor.

### FNMA's Position

FNMA argues that the court should grant relief from the stay because the debtors have no interest in the property due to their failure to cure their mortgage default or to redeem the property within the statutorily prescribed time. Initially, FNMA argues that pursuant to Bankruptcy Code § 1322, a debtor's right to cure a mortgage default terminates when the property is sold at a foreclosure sale. FNMA contends that the phrase "sold at a foreclosure sale" as used in Code § 1322(c)(1) refers to the time during the actual foreclosure auction when the sheriff declares that the property is sold to the highest bidder, and not to the date when the sheriff's deed is delivered to the purchaser. FNMA argues that this interpretation is consistent with the legislative history of § 1322 which reveals Congress' intent to fix a bright line rule with regard to a debtor's right to cure a mortgage default. FNMA reasons that the actual sale at auction provides this bright line because at the time of sale, equitable title and the rights and liabilities of ownership pass to the purchaser. Further, FNMA argues, the sale date is definitive and a matter of public notice. FNMA further argues that fixing the time of sale at the moment the auctioneer's gavel is struck balances a debtor's right to cure with a mortgagee's right to collect on the debt. FNMA argues that if "sold at a foreclosure sale" were interpreted to mean the date on which

the sheriff's deed is delivered, a debtor's rights with regard to the mortgaged premises would vary from month to month and vicinage to vicinage depending on the administrative concerns of each sheriff's office. FNMA therefore argues that the debtors' right to cure their mortgage default was terminated on October 28, 1996 by the foreclosure sale of the property.

FNMA also argues that the time in which the debtors may redeem the property has expired. FNMA argues that pursuant to state law, a debtor may redeem a mortgaged property within ten days of sale by paying in full the mortgage indebtedness plus foreclosure and sale costs. FNMA argues that where a debtor files a bankruptcy petition within the ten day redemption period provided by state law, Bankruptcy Code § 108(b) extends the debtor's redemption period an additional 60 days. FNMA argues, however, that a debtor's bankruptcy filing does not renew the right to cure the mortgage default, which was terminated upon sale of the property pursuant to Code § 1322. FNMA argues that a debtor who fails to redeem a mortgaged property within the time prescribed by state law or the extended time provided by Code § 108(b) loses the right of redemption. FNMA argues that because the debtors failed to redeem the property within the time prescribed by state law and extended by Code § 108(b), the debtors no longer have an interest in the property. FNMA therefore argues that because the debtors have no right to cure their default or redeem the property the court should vacate the automatic stay.

### The Debtors' Position

The debtors argue that they attempted to cure the mortgage arrears during the pendency of their first bankruptcy case by an execution on Caren Hric's wages and by making payments which FNMA returned. The debtors contend, however, that they were prevented from curing the default due to FNMA's failure to provide a current statement of the amount needed to cure. The debtors argue that during the time in which they sought a statement of the amount needed to reinstate the mortgage, FNMA sold the

property at foreclosure and the debtors' bankruptcy case was subsequently closed.

The debtors argue that a property is "sold at a foreclosure sale" within the meaning of Code § 1322(c)(1) when the sheriff's deed is delivered to the purchaser. The debtors also argue that since filing the petition commencing the instant case, the debtors have made substantial payments to the trustee on account of the mortgage arrears and have proposed to cure their mortgage arrearage through their chapter 13 plan. The debtors argue that it would be unfair if they were forced to lose their home because of FNMA's failure to provide the proper cure total, especially given their current ability to meet the mortgage obligations.

## CONCLUSIONS OF LAW

### A. Relief from the Automatic Stay

In deciding whether FNMA is entitled to relief from the automatic stay, the court will address two issues: (1) whether, under Bankruptcy Code § 1322(c)(1), a debtor's right to cure a mortgage default terminates on the date the sheriff's sale of the residence is conducted or on the date the sheriff delivers the deed to the purchaser and (2) whether, under Bankruptcy Code § 108(b), a chapter 13 debtor who files a bankruptcy petition before expiration of the state law redemption period must redeem the foreclosed property within 60 days of the petition date. FNMA argues that a debtor's right to cure a mortgage default is extinguished at the sheriff's sale when the highest bid is accepted. Further, FNMA argues that where a debtor fails to cure a mortgage default before the sheriff's sale and fails to redeem the property within the redemption period, the debtor loses all right, title and interest in the subject property. The debtors argue that the right to cure does not terminate until delivery of the deed to the successful purchaser. The debtors do not address the right of redemption.

Bankruptcy Code § 1322 governs a debtor's right to cure mortgage arrears under a chapter 13 plan. *See* 11 U.S.C. § 1322(b)(2), (b)(5), (c) (1994). Code § 1322 provides in pertinent part:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured ... until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law. . . .

*Id.* § 1322(c)(1). Pursuant to subsection (c)(1), a debtor-mortgagor may cure a mortgage default until the residence is "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." *Id.* The parties in the instant case do not dispute that New Jersey state law provides the "applicable nonbankruptcy law." Bankruptcy courts in this district disagree as to whether a property is "sold at a foreclosure sale" under state law upon sale to the highest bidder at the foreclosure auction or upon delivery of the deed to the purchaser. *Compare In re Simmons,* 202 B.R. 198, 204 (Bankr.D.N.J.1996) (holding that a residence is sold at a foreclosure sale within the meaning of Code § 1322(c) when the sheriff declares that the property is sold to the highest bidder) *and In re Little,* 201 B.R. 98, 104 (Bankr.D.N.J.1996) (holding that in New Jersey, a debtor's right to cure a mortgage default through a chapter 13 plan terminates with the conclusion of the sheriff's sale, and not upon delivery of deed to purchaser) *with In re Ross,* 191 B.R. 615, 621 (Bankr.D.N.J. 1996) (holding that the language and legislative history of Code § 1322(c) and New Jersey law support the conclusion that a debtor may cure a mortgage default until actual delivery of the sheriff's deed to the purchaser). A review of such case law is particularly appropriate and instructive.

In *In re Ross,* the first published opinion within this district to address the meaning of Code § 1322(c)(1), the court held that a debtor's right to cure a mortgage default and reinstate a mortgage terminates upon actual delivery of the deed of sale to the successful purchaser. *Ross,* 191 B.R. at 621. Initially, the court distinguished a debtor's right to cure a default under Bankruptcy Code § 1322 from a debtor's right to redeem the mortgaged property under state law. *See id.* at 617–18. Noting Congress' intent to estab- lish a bright line termination point of a debtor's right to cure mortgage arrears, the court looked to the language of § 1322(c)(1) to identify that point. *See id.* at 618. Finding the phrase "sold at a foreclosure sale" ambiguous, the court looked next to the legislative history of the provision, case law interpreting § 1322(c)(1) and New Jersey law. *See id.* at 618–21. The court noted that the legislative history and case law construing the statute confirm that a property is "sold," and thus the right to cure terminates, when a foreclosure sale is final. *See id.* at 618–19. The court held that a foreclosure sale is complete under New Jersey law when the deed is delivered to the successful purchaser. *See id.* at 620 ("[U]nder New Jersey law, a sale is not 'final' at the point of the fall of the gavel at the sheriff's sale. Rather, the point of finality is reached at the expiration of the ten-day period of objection and the conveyance of the sheriff's deed."). The court reasoned that although New Jersey law no longer requires confirmation of the sale, the rights of the successful bidder remain inchoate and defeasible until ten days following the auction. *See id.* The court further reasoned that although delivery of the deed is a mere ministerial act, legal title does not vest in the purchaser until such time. *See id.* at 620–21. Finding the date on which legal title is conveyed determinative, the court held that under § 1322(c)(1), a chapter 13 debtor retains the right to cure a mortgage default following the entry of foreclosure judgment until actual delivery of the sheriff's deed. *See id.* at 621.

█ In *In re Simmons,* another bankruptcy judge in this district considered whether, under Code § 1322(c)(1), a debtor's right to cure defaults and reinstate a mortgage terminates on the date of the auction sale or when the sheriff delivers the deed to the successful bidder. *See Simmons,* 202 B.R. at 200. Initially, the court examined the plain language of § 1322(c)(1). *See id.* at 200–01. Concluding that the meaning of the statute was not readily discernible from its language, the court looked to the legislative history and case law existing at the time of the statute's enactment. *See id.* at 201–03. The court noted the fresh start policy of the Bankruptcy Code, Congress' intent to mark a defini-

tive cure point for debtors in all jurisdictions, and the customary use of the term "foreclosure sale" to refer to the actual event of sale. *See id.* The court also employed canons of statutory construction and concluded that the most common sense reading of § 1322(c)(1) is that "sold at a foreclosure sale" refers to the event of sale. *Id.* at 203. The court found that establishing the auction date as the point at which the property is sold best comports with the policies behind the statute because it affords the debtor sufficient notice and time from the judgment of foreclosure to cure while providing uniformity, certainty and finality to mortgagees. *See id.* at 203–04. Lastly, the court noted that such an interpretation is consistent with New Jersey law which recognizes that equitable title to real property is transferred, and thus in all material respects a foreclosure sale is final, upon conclusion of the auction sale. *See id.* at 204 (citing New Jersey cases and noting that equitable title is defeasible in limited circumstances upon proper objection). Accordingly, the *Simmons* court held that a debtor's right to cure mortgage arrears through a chapter 13 plan terminates upon sale of the mortgaged property which occurs when the sheriff awards the property to the highest bidder. *See id.* at 202.

*In re Little* issued the same holding as *Simmons* that the phrase "sold at a foreclosure sale" in Code § 1322(c)(1) refers to the sheriff's auction. *See Little,* 201 B.R. at 107; *see also In re Ziyambe,* 200 B.R. 790, 794 (Bankr.D.N.J.1996).

This court concurs with the decisions in *Simmons* and *Little.* Several points bear emphasis.

First, this court agrees with *Simmons* that the phrase "that is conducted in accordance with applicable nonbankruptcy law" in § 1322(c)(1) "modifies the term 'foreclosure sale' and simply requires that the sale be held in a procedurally correct manner." *Simmons,* 202 B.R. at 203. The issue therefore boils down to the meaning of the preceding phrase "sold at a foreclosure sale" in § 1322(c)(1).

New Jersey Superior Court Rule 4:65, "Sale of Property; In General," repeatedly refers to the event of the auction as the "sale," and distinguishes the "sale" from the delivery of the deed. For example, Rule 4:65–5 states in pertinent part:

> A sheriff who is authorized or ordered to sell real estate shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to the sale is served within 10 days *after the sale* or at any time thereafter before the delivery of the conveyance.

N.J.Sup.Ct.R. 4:65–5 (emphasis added). Because the question is what constitutes the sale under state law, the argument that the sale does not occur until delivery of the deed cannot stand in light of the language of Rule 4:65. Moreover, the court will take judicial notice that parties to the State's foreclosure practice refer to the auction as the "sale." The debtors are therefore arguing for a definition of "sale" which differs from that employed by state court rule and practice on foreclosure sales.

To the extent that passage of title is in issue, *Simmons* acknowledged that the successful bidder acquires equitable title at the sale, subject to defeasance only if an objection to sale is timely filed and sustained or if the right of redemption is timely exercised. *Simmons,* 202 B.R. at 204.

Lastly, the debtors' post-sale right of redemption is the type of right for which Code § 108(b) was intended. That section states in pertinent part:

> [I]f applicable nonbankruptcy law . . . fixes a period within which the debtor . . . may . . . cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only . . . cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b). Applicable nonbankruptcy law in New Jersey does not permit a debtor to cure a default on a mortgage which has resulted in a foreclosure judgment and

sale. It does, however, permit the debtor to perform a "similar act," i.e., it gives the debtor one last opportunity to pay the foreclosure judgment in full until the sheriff delivers the deed to the successful bidder at the auction. If, therefore, the debtor files a bankruptcy petition within the ten day redemption period or at any time before delivery of the deed, the debtor has up to 60 days from the petition date to redeem the property.

The court has considered the debtors' other arguments and finds them to be without merit.

■ For these reasons, the court concludes that the phrase "sold at a foreclosure sale" in Code § 1322(c)(1) refers to the auction itself, and that the debtor has no right thereafter to cure a default under that section. Because the petition in this case was filed after the sale, the debtors may not reinstate the mortgage under § 1322(c)(1). Because more than 60 days have elapsed since the petition was filed and the debtors have not redeemed the property by paying the judgment in full under Code § 108(b), their rights under that section have also terminated. The debtors therefore have no further rights in the subject property and FNMA is entitled to relief from the automatic stay.

### B. Prospective Relief from the Automatic Stay

■ FNMA has also requested prospective relief from the automatic stay in the event of any future bankruptcy filings by the debtors. In light of the holding set forth above, it would be an abuse of the bankruptcy process for the debtors or any purported successors in interest to delay issuance of the sheriff's deed or their removal from the property by any future bankruptcy filings. Under such circumstances prospective relief from the automatic stay is granted. *See In re Jones,* 105 B.R. 1007 (N.D.Ala.1989); *In re Abdul–Hasan,* 104 B.R. 263 (Bankr. C.D.Cal.1989). FNMA is therefore also granted prospective relief from the automatic stay in the event of future bankruptcies.

## CONCLUSION

For the foregoing reasons, FNMA's motion to vacate the automatic stay and for prospective relief is granted. FNMA shall submit an order within seven days under D.N.J.LBR 9072–1(c).