

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-3-2007

# In Re: Connors

Precedential or Non-Precedential: Precedential

Docket No. 06-3321

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re: Connors " (2007). *2007 Decisions.* Paper 510.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/510

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 06-3321

————

IN RE: VINCENT J. CONNORS,
                              Debtor

Vincent J. Connors,
                              Appellant

————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 05-cv-02236
District Judge:  The Honorable Dennis M. Cavanaugh

————

Argued:  June 27, 2007

————

Before: BARRY, FUENTES, and JORDAN, <u>Circuit Judges</u>

(Opinion Filed:   August 3, 2007)

————

Scott D. Sherman, Esq. (Argued)
Minion & Sherman
33 Clinton Road, Suite 200
West Caldwell, NJ 07006
        -AND-
Herbert B. Raymond, Esq.
Raymond & Raymond
7 Glenwood Avenue
East Orange, NJ 07017

<u>Counsel for Appellant</u>

Neil J. Fogerty, Esq. (Argued)
Hudson County Legal Services Corp.
574 Summit Avenue, 2nd Floor
Jersey City, NJ 07306
        -AND-
Scott F. Waterman, Esq.
Black, Stranick & Waterman
327 West Front Street
P.O. Box 168
Media, PA 19063

Counsel for Amicus National Association of Consumer
Bankruptcy Attorneys

Warren S. Wolf, Esq. (Argued)
Cureton Caplan
3000 Midlantic Drive, Suite 200
Mount Laurel, NJ 08054

Counsel for Appellee Deutsche Bank National Trust Co.

Matthew M. Fredericks, Esq. (Argued)
David Kessler & Associates
1373 Broad Street
Clifton, NJ 07013

Counsel for Appellee 41 Lakeridge LLC

Richard P. Haber, Esq. (Argued)
Joel A. Ackerman, Esq.
Zucker, Goldberg & Ackerman, LLC
200 Sheffield Street - Suite 301
Mountainside, NJ 07092

Counsel for Amicus New Jersey League of Community Bankers

———

BARRY, <u>Circuit Judge</u>

This bankruptcy appeal presents a question on which New Jersey federal bankruptcy and district courts have been divided for more than ten years: whether, under 11 U.S.C. § 1322(c)(1), a Chapter 13 debtor has the right to cure a default on a mortgage secured by the debtor's principal residence between the time the residence is sold at a foreclosure sale and the time the deed is delivered. Having finally been given the opportunity to break what is a virtual tie between the New Jersey federal courts, we hold that § 1322(c)(1) does not afford the debtor that right.

## I.

On August 21, 2002, Appellant Vincent J. Connors executed a $252,000 note and mortgage on his residence at 41 Lakeridge Drive, Matawan, New Jersey, in favor of the predecessor in interest of Appellee Deutsche Bank National Trust Co. ("Deutsche Bank"). Connors subsequently defaulted on the note, causing Deutsche Bank to foreclose on March 4, 2004. At a foreclosure sale on November 10, 2004, the property was sold to Appellee 41 Lakeridge LLC ("Lakeridge") for $330,000; Lakeridge tendered the required 20% deposit.

On November 14, 2004, Connors filed a voluntary petition under Chapter 13 of the Bankruptcy Code. The filing triggered an automatic stay of proceedings under 11 U.S.C. § 362. Two weeks later, on November 30, 2004, Connors filed a Chapter 13 Plan, which proposed to cure his pre-petition arrears on the mortgage. He did not, however, exercise his statutory right to object to the foreclosure sale or redeem within 60 days of the filing of his Chapter 13 petition, as is permitted under N.J. Ct. R. 4:65-5 and 11 U.S.C. § 108(b), respectively.

On January 19, 2005, the 60-day period having expired, Lakeridge filed a motion to lift the automatic stay to permit it to tender the balance of the purchase price and receive the deed. Connors opposed the motion. The Bankruptcy Court held a

hearing and granted the motion, explaining, in its March 9, 2005 letter opinion, that Connors no longer had the right to cure the default on his mortgage under 11 U.S.C. § 1322(c)(1), and that his right to redeem under state law had expired. Before Lakeridge could tender the balance and receive the deed, however, the Court granted a stay pending Connors's appeal.

The District Court affirmed. Noting a "schism" among New Jersey courts regarding whether § 1322(c)(1) creates a right to cure a default that expires upon delivery of the deed, the Court held that the right to cure expires at the foreclosure sale, and that § 1322(c)(1) "allows the debtor to exercise only what additional remedy applicable state law provides." (App. at 7.) Because Connors's state-law rights had expired, the Court held, the Bankruptcy Court appropriately granted Lakeridge's motion to lift the automatic stay. This appeal followed.

## II.

The Bankruptcy Court had jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334(b), over Connors's Chapter 13 petition. The District Court had jurisdiction, pursuant to 28 U.S.C. § 158(a), over Connors's appeal from the Bankruptcy Court's order lifting the automatic stay. *See United States v. Pelullo*, 178 F.3d 196, 200 (3d Cir. 1999) (holding that order lifting automatic stay in bankruptcy proceeding is appealable); *In re Comer*, 716 F.2d 168, 172 (3d Cir. 1983) (holding that bankruptcy court's order lifting automatic stay "is final in the sense that it completes litigation on the question and subjects the property to a foreclosure action in state court"). We have jurisdiction, pursuant to 28 U.S.C. §§ 158(d) and 1291 and Federal Rule of Appellate Procedure 6(b), over Connors's appeal from the District Court's final order affirming the order of the Bankruptcy Court.

Our review of the District Court's order is plenary. *In re Brannon*, 476 F.3d 170, 173 (3d Cir. 2007). We apply the same standards as the District Court, examining the Bankruptcy Court's legal conclusions *de novo* and reviewing its factual findings for clear error. *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005).

4

**III.**

The sole question we must decide is whether, under 11 U.S.C. § 1322(c)(1), a Chapter 13 debtor has the right to cure a default on a mortgage secured by the debtor's principal residence between the time the residence is sold at a foreclosure sale and the time the deed is delivered.

**A.** **The Unambiguous Language of § 1322(c)(1) Supports the "Gavel Rule"**

Section 1322 of the Bankruptcy Code sets forth the minimum requirements for a mandatory Chapter 13 Plan. 11 U.S.C. § 1322; S. Rep. 95-989, at 141 (1978). Subsection (b)(3) broadly permits the plan to "provide for the curing or waiving of any default," and subsection (b)(5) permits the plan to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(3), (5). Subsection (c)(1) limits the broad sweep of subsections (b)(3) and (b)(5) by providing, in relevant part, as follows:

> [A] default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law . . . .

11 U.S.C. § 1322(c)(1).

Since the enactment of subsection (c)(1) as part of the Bankruptcy Reform Act of 1994, New Jersey bankruptcy and district courts have disagreed over whether (c)(1) gives a Chapter 13 debtor the right to cure a default on a home mortgage between the time the residence is sold at a foreclosure sale and the time the deed is delivered. One line of cases holds that § 1322(c)(1) guarantees the right to cure a default on a home

5

mortgage only until the gavel falls at a foreclosure sale.[1] Courts frequently refer to this view as the "gavel rule." The other line of cases maintains that a residence is not "sold" within the meaning of § 1322(c)(1), and the debtor has the right to cure a default, until the deed is delivered to the winning bidder.[2] This view is commonly known as the "deed-delivery rule."

We start with the language of the statute. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998). Some courts have found ambiguity in the phrase, "that is conducted in accordance with applicable nonbankruptcy law." In *Simmons*, for instance, the Court found the phrase ambiguous because "it is not readily apparent whether Congress intended the phrase to apply only to the event of sale, or to the entirety of the sale process, including the giving of a deed." 202 B.R. at 201. We are unpersuaded that the phrase is ambiguous; indeed, to find ambiguity would be to deny the words their plain meaning. The word "that" is a relative pronoun that restricts and, therefore, modifies, the preceding noun, "foreclosure sale." Thus, when the statute refers to "a foreclosure sale that is

---

[1] *Connors v. Deutsche Bank Nat'l Trust Co.*, No. Civ. A. 05-2236, 2006 WL 1722609, at *2 (D.N.J. June 20, 2006); *In re Maricic*, No. 02-37500, slip op. (Bankr. D.N.J. 2002); *In re Mangano*, 253 B.R. 339, 344-45 (Bankr. D.N.J. 2000); *In re Veltre*, No. 99-40669, 2000 Bankr. LEXIS 1409, at *4-6 (Bankr. D.N.J. May 31, 2000); *In re Hric*, 208 B.R. 21, 26 (Bankr. D.N.J. 1997); *In re Simmons*, 202 B.R. 198, 203, 205-06 (Bankr. D.N.J. 1996); *In re Ziyambe*, 200 B.R. 790, 794 (Bankr. D.N.J. 1996); *In re Little*, 201 B.R. 98, 105 (Bankr. 1996). The Sixth Circuit has also adopted this view. *See In re Cain*, 423 F.3d 617, 619 (6th Cir. 2005).

[2] *Chisholm v. Cendant Mortgage Corp.*, No. Civ. 04-6398, 2005 WL 1522232, at *1 (D.N.J. June 27, 2005); *In re Randall*, 263 B.R. 200, 201 (D.N.J. 2001); *In re Downing*, 212 B.R. 459, 467 (Bankr. D.N.J. 1997); *In re Ross*, 191 B.R. 615, 621 (Bankr. D.N.J. 1996); *In re Macavia*, No. 95-34118, 1995 Bankr. LEXIS 2103, at *7-8 (Bankr. D.N.J. 1995).

conducted in accordance with applicable nonbankruptcy law," it clearly refers to a foreclosure sale that complies with state-law procedures. *See New Castle County v. Hartford Acc. & Indem. Co.*, 970 F.2d 1267, 1270 (3d Cir. 1992) ("[T]he question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner."). We agree with those decisions that have reached this conclusion without resorting to legislative history. *See, e.g.*, *Cain*, 423 F.3d at 620; *Hric*, 208 B.R. at 25; *see also Simmons*, 202 B.R. at 203 (finding that canons of statutory construction, as well as "common sense," mandated the same reading, but also considering legislative history).[3]

We must also determine what it means for a residence to be "sold at a foreclosure sale." Deconstructing this phrase further, we must determine the meaning of "foreclosure sale"—a term that Appellees contend is synonymous with the foreclosure auction, but that Connors insists refers to the entire foreclosure process, terminating with the delivery of a deed. The Bankruptcy Code does not define "foreclosure sale," so we must give it its ordinary meaning. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 822 (3d Cir. 1999).

Outside of cases applying the deed-delivery rule, the term "foreclosure sale" is broadly understood to mean the foreclosure auction. First, the preposition "at" in "sold at a foreclosure sale" signifies a discrete event, rather than an ongoing process. *See Chisholm*, 2005 WL 1522232, at *3. Second, at least one New

---

[3] Connors asks us to consider *Wright v. Union Central Life Insurance Co.*, 304 U.S. 502 (1938), a case in which the Supreme Court upheld the constitutionality of a provision of the Bankruptcy Code that extended any state-law right of redemption that a debtor possessed at the time he or she filed a petition in bankruptcy. That holding is inapplicable here because § 1322(c)(1) does not purport to extend any state-law right; it simply recognizes a federal right to cure that extends until the property is "sold at a foreclosure sale." The provision that did extend Connors's state-law right to redeem, § 108(b), expired 60 days after he filed his petition.

7

Jersey bankruptcy court has taken judicial notice of the fact that New Jersey foreclosure practitioners refer to the foreclosure auction as the "sale." *Hric*, 208 B.R. at 25. Third, the New Jersey statute setting forth the procedures governing sheriffs' sales specifically refers to the auction as the "foreclosure sale." *See* N.J.S.A. § 2A:50-64 (requiring the successful bidder to deposit 20 percent of the purchase price "immediately upon the conclusion of the foreclosure sale"). Fourth, New Jersey rules governing sheriffs' sales treat "sale" as synonymous with the auction, and distinguish between the "sale" and the delivery of the deed. *See* N.J. Ct. R. 4:65-2 (requiring notice to be served "at least 10 days prior to the date set for sale"); 4:65-4 (specifying the place of the "sale"); 4:65-5 (permitting objections to be served "within 10 days after the sale," and permitting courts to dispose of such objections and direct the sheriff to deliver the deed); 4:65-6 (requiring sheriff to file with the court "a report of any sale made," and authorizing a subsequent judicial confirmation hearing at which the court may order delivery of the deed). And, fifth, the Supreme Court of New Jersey consistently refers to the foreclosure auction as the "foreclosure sale." *See, e.g.*, *Panetta v. Equity One, Inc.*, 920 A.2d 638, 648 (N.J. 2007); *BTD-1996 NPC 1 L.L.C. v. 350 Warren L.P.*, 784 A.2d 1214, 1223 (N.J. 2001); *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1063 (N.J. 1996). There is no doubt that "foreclosure sale," as it is commonly understood, signifies the foreclosure auction. *See, e.g.*, *Cain*, 423 F.3d at 620; *Hric*, 208 B.R. at 25; *Simmons*, 202 B.R. at 203.

Some courts have found ambiguity arising from a perceived conflict between the terms "sold" and "foreclosure sale." These courts have reasoned that, in New Jersey, a residence is not "sold" until the deed is delivered, and the deed is not delivered until after the foreclosure sale. *See, e.g.*, *Chisholm*, 2005 WL 1522232, at *4; *Randall*, 263 B.R. at 203; *Downing*, 212 B.R. at 463; *Ross*, 191 B.R. at 621. The terms "sold" and "foreclosure sale" are not in conflict. In New Jersey, the successful bid at a foreclosure auction is generally irrevocable,

8

*see Simmons*, 202 B.R. at 204,[4] and the bidder acquires equitable title that is not subject to defeasance except under narrow circumstances. If, for instance, within ten days of the foreclosure sale, the mortgagor files objections that are judicially sustained, N.J. Ct. R. 4:65-5, or exercises the right of redemption, *Hardyston Nat'l Bank of Hamburg v. Tartamella*, 267 A.2d 495, 498 (N.J. 1970), the purchaser may lose equitable title. *Simmons*, 202 B.R. at 204; *see also Ziyambe*, 200 B.R. at 796 ("Under New Jersey law, . . . title to the property is indefeasibly vested in the successful bidder unless objection to the sale is filed within ten days."). Although delivery of the deed conveys legal title, *Randall*, 263 B.R. at 203, the delivery itself has been described as "a ministerial act, routinely performed, which does not affect the redemption rights of the parties." *Ziyambe*, 200 B.R. at 796.[5] Numerous courts have concluded, accordingly, that a residence is "sold" at the foreclosure auction. *See, e.g.*, *In re Townsville*, 268 B.R. 95, 118-19 (Bankr. E.D. Pa. 2001); *In re Denny*, 242 B.R. 593, 598-99 (Bankr. D. Md.1999); *Hric*, 208 B.R. at 25; *Ziyambe*, 200 B.R. at 796-97. For purposes of § 1322(c)(1), we conclude likewise.

The gavel rule does not, of course, cut off the debtor's state-law post-sale remedies. Those remedies may continue past

---

[4] *Cf.* N.J.S.A. § 2A:61-16 (allowing purchaser relief from bid if defect of title renders title unmarketable, or if title is subject to lien or encumbrance).

[5] In rare circumstances, as when the mortgagor has received insufficient notice of foreclosure proceedings, the right to redeem may be asserted even after delivery of the deed. *Mercury Capital Corp. v. Freehold Office Park, Ltd.*, 832 A.2d 369, 378 n.10 (N.J. Sup. Ct. Ch. Div. 2003) (citing cases relying on the inherent equity power of the Chancery Court). An equity of redemption that continues beyond the delivery of the deed would undermine any suggestion that the delivery of the deed is the only true "point of finality" in the foreclosure process. *Cf. Chisholm*, 2005 WL 1522232, at *5. A "finality" requirement, moreover, has no basis in the language of the statute.

the date of the foreclosure sale by operation of another provision of the Bankruptcy Code, 11 U.S.C. § 108(b). Section 108(b) provides, in relevant part, as follows:

> [I]f applicable nonbankruptcy law . . . fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of–
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b). We have interpreted this provision to mean that "when a bankruptcy petition is filed before the expiration of a statutory grace period, if need be § 108(b) can extend the grace period for 60 days from the date of the filing of the petition." *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1059 (3d Cir. 1988).[6] Under New Jersey law, the applicable grace period is the ten-day period to object, pursuant to N.J. Ct. R. 4:65-5, or redeem, pursuant to *Hardyston*. When a Chapter 13 petition is filed during the ten-day period, this period is extended to 60 days from the filing of the petition by operation of § 108(b). Connors, therefore, had 60 days from the filing of his petition to object or redeem. When he failed to do so, Lakeridge's equitable title was no longer subject to defeasance.

We hold, therefore, that under the unambiguous language of 11 U.S.C. § 1322(c)(1), a Chapter 13 debtor does not have the right to cure a default on a mortgage secured by the debtor's

---

[6] Some courts suggest that § 108(b) extends the state-law grace period by an *additional* 60 days. *See, e.g.*, *Ross*, 191 B.R. at 617-18. We are bound by our holding in *Counties Contracting* that the 60-day period runs from the filing of the petition.

principal residence between the time the residence is sold at a foreclosure sale and the time the deed is delivered.

**B.     The Legislative History behind § 1322(c)(1) and Policy Considerations Lend Further Support for the Gavel Rule**

Although, given the foregoing, it is unnecessary to examine the legislative history of § 1322(c)(1), we briefly do so here because it is consistent with the statutory language. Subsection (c)(1) was added to the Bankruptcy Code to make explicit that a debtor's right to cure a default on a mortgage secured by his or her principal residence continues at least until the "foreclosure sale," and may continue beyond that date if state law provides additional cure rights. H.R. Rep. 103-835, at 52 (1994), *reprinted in* 1994 U.S.S.C.A.N. 3340, 3361. Until our decision in *In re Roach*, 824 F.2d 1370 (3d Cir. 1987), all of the federal courts of appeals had recognized that a debtor's right to cure a default on a home mortgage continued at least until the time of the foreclosure sale. H.R. Rep. 103-835, at 52, *reprinted in* 1994 U.S.S.C.A.N. at 3361. In *Roach*, however, we held that a debtor's right to cure expired at the foreclosure judgment, an event that preceded the foreclosure sale. *Roach*, 824 F.2d at 1378-79. Congress added subsection (c)(1) to overrule *Roach* and establish a uniform time—the "foreclosure sale"—for expiration of a debtor's federal right to cure.

Proponents of the deed-delivery rule tend to place great emphasis on a statement in the legislative history suggesting Congress's intent to "allow[] the debtor to cure home mortgage defaults at least *through completion* of a foreclosure sale under applicable nonbankruptcy law." H.R. Rep. 103-835, at 52, *reprinted in* 1994 U.S.S.C.A.N. at 3361 (emphasis added). They reason that under state law, a foreclosure sale has not been "completed" until delivery of the deed. *See, e.g.*, *Chisholm*, 2005 WL 1522232, at *4-5; *Randall*, 263 B.R. at 203; *Downing*, 212 B.R. at 466; *Ross*, 191 B.R. at 621; *Macavia*, 1995 Bankr. LEXIS 2103, at *7-8. It is by no means evident from the word "completion" in this one fragment of legislative history, however, that Congress intended "foreclosure sale" to refer to the entire state-law foreclosure process. Viewed in the context

11

of Congress's express intent to overrule the aberrant *Roach* holding, it is eminently more plausible that Congress intended to set the expiration of a debtor's federal right to cure at the foreclosure sale, thus restoring the uniformity that existed pre-*Roach*.  The foreclosure sale is, thus, "completed" with the fall of the gavel and the vesting of equitable title in the winning bidder.  *See Cain*, 423 F.3d at 621.

That the federal right to cure expires at the foreclosure sale finds support in the statement of Senator Charles Grassley when speaking on behalf of the bill that was ultimately enacted:

> Title III of the bill will assist homeowners.  Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy court has ordered a foreclosure sale.  There may be several months between the court order and the foreclosure sale.  Section 301 will preempt conflicting State laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs.

140 Cong. Rec. S14,462 (1994).  Senator Grassley was an original co-sponsor of the Senate bill, which would have permitted the debtor to cure a default so long as he or she "possesses any legal or equitable interest, including a right of redemption," at the time the petition was filed.  S. Rep. 103-168, at 21 (1993).  This is precisely the interpretation that Connors now urges, and Congress's rejection of the Senate bill in favor of the current language of §1322(c)(1) is telling.

The gavel rule also makes sense as a matter of policy.  In *In re McCarn*, 218 B.R. 154, 160 (B.A.P. 10th Cir. 1998), a bankruptcy appellate panel in the Tenth Circuit acknowledged that the foreclosure sale, in contrast to the delivery of the deed, must be preceded by notice to the debtor.  Such notice affords the debtor ample opportunity to protect his or her interests by filing a bankruptcy petition *before* the foreclosure sale and exercising the right to cure under § 1322(c)(1).  *See also Simmons*, 202 B.R. at 203-04.  To the extent that debtors' rights are not sufficiently protected, states remain free to provide them

12

with additional post-sale remedies by virtue of § 108(b).  *See, e.g.*, *Justice v. Valley Nat'l Bank*, 849 F.2d 1078, 1082 (8th Cir. 1988).  Meanwhile, the gavel rule protects purchasers by avoiding an interpretation that turns § 1322(c)(1) into a federal vehicle for divesting them of property rights acquired at foreclosure sales.  Increased uncertainty of ownership may also translate to lower foreclosure bids, a factor that New Jersey courts consider when confirming foreclosure sales.  *See* N.J. Ct. R. 4:65-5 (permitting court to confirm sale if it "is satisfied that the real estate was sold at its highest and best price at the time of the sale").

## IV.

We, therefore, hold that under 11 U.S.C. § 1322(c)(1), a Chapter 13 debtor does not have the right to cure a default on a mortgage secured by the debtor's principal residence between the time the residence is sold at a foreclosure sale and the time the deed is delivered.  We will, accordingly, affirm.

13