**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1677
_____

PAUL RATHBLOTT,
                    Appellant

v.

PEOPLESTRATEGY, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-04293)
District Judge: Honorable Jan E. DuBois
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 24, 2017
_____

Before: CHAGARES, RESTREPO, and ROTH, <u>Circuit Judges</u>

(Filed: April 12, 2017)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, Circuit Judge

Paul Rathblott appeals the decision of the District Court dismissing his amended complaint for breach of a settlement agreement. We will affirm.

**I**

As we write for the benefit of the parties, we set out only the facts necessary for the discussion that follows. In 2012, Rathblott and a business partner sold an interest in a company to PeopleStrategy, in return for which PeopleStrategy signed a purchase agreement and promissory note. The parties soon disagreed about the terms. PeopleStrategy sued Rathblott, who counterclaimed. The parties settled that suit in 2014.

This suit pertains to the 2014 settlement agreement. That agreement provides for PeopleStrategy to pay Rathblott $900,000 in 72 monthly payments of $12,500, plus interest calculated at an annualized rate of 1% per year on the unpaid balance. Those monthly payments are due on the first banking day of each month, and are considered to be paid only upon the funds actually being available to Rathblott. In April 2015, PeopleStrategy made a payment for which the funds did not become available in Rathblott's account until the second banking day of the month.

The 2014 settlement agreement contained a number of provisions addressing late payments and consequences. Section 3(c) says that the 1% interest rate increases to 6% per year upon the first "payment default." App. 26. Section 5(a) says that a payment default occurs when a payment remains unpaid for ten days after the receipt of notice—a ten day "cure period." App. 27. Section 5(b) says that the balance accelerates and the

2

interest rate increases from 1% to 6% if PeopleStrategy resorts to the cure provision more than three times in any twelve-month period.

When PeopleStrategy made the April 2nd payment, Rathblott insisted that PeopleStrategy increase its payments going forward to reflect the higher interest rate required upon a payment default. Under Rathblott's reading of the settlement agreement, the cure provision only saves PeopleStrategy from having the entire balance accelerate forward upon default, and does not prevent the increase in the interest rate. When PeopleStrategy disputed that interpretation and continued to pay 1% interest in subsequent months, Rathblott sued for breach of contract.

The District Court granted PeopleStrategy's motion to dismiss Rathblott's amended complaint, with prejudice. In granting the motion, the District Court determined that the contract language was not ambiguous, and that the interest rate increase in Section 3(c) applies upon the first uncured late payment. Rathblott appeals.

## II[1]

Under Pennsylvania law, a plaintiff pressing a breach of contract claim must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (internal citation omitted). Assessing the meaning of a

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review of a District Court's grant of a motion to dismiss is plenary. *N.Y. Shipping Ass'n Inc. v. Waterfront Comm'n of N.Y. Harbor*, 835 F.3d 344, 352 (3d Cir. 2016). On review, we apply the same standard as the District Court. *Id.* To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

contract's ambiguous terms, and whether those terms have been breached, is the role of the fact-finder. *Bohler-Uddenholm America, Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 94 (3d Cir. 2001). However, a court must make "a preliminary inquiry" as to whether the contract is ambiguous. *Hullett v. Towers, Perrin, Foster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994). If the contract is not ambiguous—that is, if the terms "can only be read one way"—"the court will interpret the contract as a matter of law." *Id.* "Although extrinsic evidence may be considered under proper circumstances, the parties remain bound by the appropriate objective definition of the words they use to express their intent." *Mellon Bank*, *N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1013 (3d Cir. 1980). Further, words that are legal terms of art should be given meaning "in accord with specialized or accepted usage." *Id.*

The question in this case, as the District Court ably summarized, "is whether PeopleStrategy's right to cure also protects it from default interest." App. 10. It does.[2]

In undertaking the preliminary inquiry based on the plain text of the cure provision and the context of the entire settlement agreement, the meaning of the cure period is not ambiguous. First, "cure" is a legal term of art in contract law, and a cure provision typically allows one party to submit a late payment without suffering the consequences of default. *See*, *e.g.*, *Rake v. Wade*, 508 U.S. 464, 474 (1993); *In re Connors*, 497 F.3d 314,

---

[2] Rathblott also argued that PeopleStrategy defaulted by neither paying the higher interest rate in any subsequent month, nor curing those insufficient payments. He argues that PeopleStrategy defaulted on the promissory note accompanying the contract for the same reason. Because either of those claims depends on PeopleStrategy having owed Rathblott a higher interest rate after the April 2nd payment, our determination that PeopleStrategy did not owe the higher rate obviates the factual basis for those claims.

4

319 (3d Cir. 2007); *Marra v. Stocker*, 615 A.3d 326, 329 (Pa. 1992). Second, as a general matter, in interpreting the contract, we should assess it on the whole. *See, e.g.*, *Bethlehem Steel Corp. v. MATX, Inc.*, 703 A.3d 39, 42 (Pa. Super. Ct. 1997) (directing review of the whole contract when assessing possible ambiguity in a provision). In determining whether a contract is ambiguous or not, judges "take[] care not to render other portions of a provision or contract superfluous when construing contract language." *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 167 (3d Cir. 2011) (quoting *New Castle Cty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 174 F.3d 338, 349 (3d Cir. 1999)).

Rathblott argues that the cure provision in the contract protected PeopleStrategy only from acceleration of the full balance and not from the increased interest rate. As the District Court noted, however, in the context of the entire settlement agreement, saying that the cure provision applies to forestall the acceleration consequence but not the increased interest rate is belied by Section 5(b). If the interest rate increased from 1% to 6% upon the first late payment of any kind, this would render superfluous the provision specifying that the interest rate would increase from 1% to 6% upon the third instance within twelve months of PeopleStrategy curing a default by submitting a late payment. The only plausible reading of Sections 3(c), 5(a), and 5(b) together is that the interest rate increases from 1% to 6% in the event of either a single uncured default, or three instances of PeopleStrategy resorting to the cure provision within twelve months.

## III

For the foregoing reasons, we will affirm the judgment of the District Court.