**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3496
_____

In re: BELARMINIO PERALTA,
d/b/a Peralta Groceries,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-02380)
District Judge: Honorable Paul S. Diamond
_____

Argued: June 21, 2022

Before: McKEE, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: September 7, 2022)
_____


Ronald G. McNeil                    [ARGUED]
MCNEIL LEGAL SERVICES
1333 Race Street
Philadelphia, PA 19107
    *Counsel for Appellant*

Joseph P. Kerrigan            [ARGUED]
KERRIGAN LAW
461 North 3rd Street, Suite 2B
Philadelphia, PA 19123
     *Counsel for Appellee*

————————————

OPINION OF THE COURT
————————————

BIBAS, *Circuit Judge*.

Rather than taking out a mortgage, homebuyers can pay the seller in installments. In Pennsylvania, these installment contracts are treated like mortgages. So if homeowners default on them, they can cure that default in bankruptcy—but only until the seller gets a judgment for possession to evict them. Yet Belarminio Peralta tried to cure the default after the seller got a judgment for possession. Because his home was not part of his bankruptcy estate, he had no right to cure his default. We will thus affirm.

## I. BACKGROUND

When Peralta wanted to buy a house, he did not take out a mortgage. Instead, he promised to pay the seller, Recon International, in installments. For years, he followed through. But he eventually stopped making payments.

Recon sued Peralta for breaching his installment contract. But it relented, giving him a second chance. It proposed new terms: Peralta could keep his house if he made payments. But if he breached again, Recon could get a judgment for possession and immediately kick him out of the house. Plus, that

second breach would "extinguish[ ] any and all rights, liens, and/or interest" that Peralta had in the house. Supp. App. 39. Peralta agreed.

Once again, Peralta fell short and stopped paying. Recon went to court and got a judgment for possession. But Peralta did not keep his side of the bargain. Rather than leave, he stayed in the house and filed for a Chapter 13 bankruptcy, hoping to revive his installment contract, finish paying, and keep his house.

Normally, Peralta's house would not be part of his bankruptcy estate. That bundle includes only his "legal or equitable interests … in property" when he filed. 11 U.S.C. § 541(a)(1). And when he breached his contract that second time, he lost any interest in his home.

Even so, Peralta thought he could show an equitable interest. Chapter 13 lets a bankrupt homebuyer "cure[ ]" a "default" on a mortgage during the bankruptcy process until the home "is sold at a foreclosure sale." 11 U.S.C. § 1322(c)(1). Though Peralta had breached an installment contract, not a mortgage, he thought that § 1322 could also cure his "default." JA 24–25. And because Pennsylvania treats foreclosed installment contracts like mortgages, Peralta added, that cure gave him an interest in his property.

Though plausible, Peralta's position is tricky: § 1322 does not fit installment contracts well. An installment contract never has a "foreclosure sale." The seller need never take title back from the defaulting homebuyer because it stays with the seller until the contract is paid off. *See Anderson Contracting Co. v.*

*Daugherty*, 417 A.2d 1227, 1231 (Pa. Super. Ct. 1979), *appeal dism'd*, 425 A.2d 329 (Pa. 1980).

Still, the bankruptcy court agreed with Peralta's theory. Though a judgment for possession had been entered against him, he still lived in the house. So, the judge reasoned, Peralta still had "an interest in a property subject to a land installment sale contract" and a § 1322 remedy. JA 29. Thus the judge included Peralta's home in his bankruptcy estate. 11 U.S.C. § 541(a)(1).

On appeal, the District Court vacated the bankruptcy court's order. It reasoned that, for installment contracts, the closest analogue to a foreclosure sale is a judgment for possession. But Recon got a judgment before Peralta tried to cure, so that remedy was unavailable. And because that judgment was entered before Peralta filed for bankruptcy, his home was not part of his bankruptcy estate. Mere possession without a good-faith claim to it did not change that.

Peralta appeals. We review de novo. *In re Connors*, 497 F.3d 314, 318 (3d Cir. 2007).

## II. SECTION 1322 APPLIES TO PENNSYLVANIA INSTALLMENT CONTRACTS

Before we decide whether Peralta's § 1322 remedy expired, we must decide whether he had one in the first place. He did. Section 1322 kicks in to "cure[ ]" a "default with respect to, or that gave rise to, a lien on the debtor's principal residence." 11 U.S.C. § 1322(c)(1). Peralta had that kind of default.

To start, this house was Peralta's primary home. And there was a lien on it. Under the Bankruptcy Code, a lien is a "charge

4

against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). And Peralta's contract fits the bill. Under Pennsylvania law, installment contracts are "secured by a lien upon real property." *Anderson Contracting Co.*, 417 A.2d at 1230–32 (internal quotation marks omitted); *cf. Stern v. Marshall*, 564 U.S. 462, 495 (2011) (looking to state law to define property interests in federal bankruptcy). So when Recon sold Peralta his home, it got a lien on his property.

Finally, when Peralta breached his revised contract, he "default[ed] with respect to … [that] lien." 11 U.S.C. § 1322(c)(1). He failed to pay his installments and fulfill his duties under the contract. That conduct is an "omission or failure to perform a legal or contractual duty." *Default*, *Black's Law Dictionary* (11th ed. 2019); *see also Am. Hous. Tr., III v. Jones*, 696 A.2d 1181, 1183–84 (Pa. 1997) (defining installment-contract breach the same way); 13 Pa. Cons. Stat. § 2612(c) (same). So § 1322(c)(1) can be used to cure installment-contract breaches, like Peralta's.

### III. PERALTA'S SECTION 1322 REMEDY ENDED BEFORE BANKRUPTCY

But Peralta's effort to use § 1322(c)(1) came too late. Section 1322 lets debtors cure defaults only until their homes are "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). That provision does not map onto installment contracts well: unlike a defaulted mortgage, a breached installment contract never ends in a foreclosure sale. But that mismatch cannot mean that § 1322(c)(1) can cure a breached installment contract forever.

5

Section 1322 lets homeowners cure their defaulted mortgages, but only before a foreclosure sale. It is not a get-out-of-jail-free card for all defaults at all times, and we will not read it to smuggle in large loopholes for unmentioned, non-mortgage defaults. *See In re Majestic Star Casino, LLC*, 716 F.3d 736, 751 (3d Cir. 2013) ("[F]iling for bankruptcy does not create new property rights or value where there previously were none.") (internal quotation marks omitted); *cf. Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001) (no elephants in mouseholes).

Besides, this mismatch stems from letting state law define property in federal bankruptcy. *See, e.g.*, *In re Majestic Star Casino, LLC*, 716 F.3d at 736 (describing a similar challenge for deciding which law governs "whether [federal] tax status constitutes a property interest of the taxpayer" in bankruptcy). Even when they do not conflict, state property law and federal bankruptcy law may not align smoothly. Federal courts must confront any jagged edges. To make sense of this one, we reason by analogy. *See, e.g.*, *In re Bos. Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 112–13 (1st Cir. 2005). For installment contracts, the best analogue to a foreclosure sale is a judgment for possession—and that moment passed for Peralta before he filed for bankruptcy, even though he stayed in the house.

### A. The best installment-contract analogue is a judgment for possession

Though the Bankruptcy Code "does not define 'foreclosure sale,'" we have. *In re Connors*, 497 F.3d at 320. In a case about an ordinary mortgage, we considered two definitions of "sold at a foreclosure sale": Could a debtor cure a mortgage default

6

only until the gavel fell at the foreclosure auction ("the gavel rule")? *Id.* at 318–19. Or could he cure it until the deed is later delivered to the winning bidder ("the deed-delivery rule")? *Id.*

We adopted the gavel rule. Though the legal interest passes at delivery of the deed, a property is "sold" as soon as there is a new equitable owner. *Id.* at 320–21. That sale happens when a bidder wins an auction. So a property is "*sold* at a foreclosure sale" as soon as the gavel falls. *Id.* at 320–21 (emphasis added).

*Connors* thus pegged the "foreclosure sale" to the transfer of equitable ownership. So the installment-contract analogue must be when a default removes the bankrupt homebuyer's equitable title. Under Pennsylvania law, that happens when a judgment for possession is entered against the homeowner. *See In re Butko*, 624 B.R. 338, 378–80 (Bankr. W.D. Pa. 2021) (analyzing a state statute akin to §1322(c)(1)); *In re Rowe*, 110 B.R. 712, 722 (Bankr. E.D. Pa. 1990) (same).

Resisting that outcome, Peralta cites the policy behind 11 U.S.C §1322(c)(1): helping homeowners keep their homes. But our task is to interpret the statutory text, not to define a policy behind it. Only legislators, not courts, can craft policy. In short, entry of a judgment for possession shuts the §1322(c)(1) window to cure defaults on installment contracts in Pennsylvania.

## B. One pre-*Connors* bankruptcy case disagreed, but it is not good law

With that rule, we agree with almost every bankruptcy court to face this question. *See, e.g.*, *In re Belmonte*, 240 B.R. 843, 852 (Bankr. E.D. Pa. 1999), *aff'd in part, rev'd in part on*

*other grounds*, 279 B.R. 812 (E.D. Pa. 2001); *In re Callahan*, 2004 WL 350753, at \*3–4 (E.D. Pa. Jan. 29, 2004).

One court has disagreed. *In re Grove*, 208 B.R. 845, 846–47 (Bankr. W.D. Pa. 1997). In that case, a couple bought a home by installment contract, breached, and had a judgment for possession entered against them. *Id.* at 846. Still in the house, the couple filed for bankruptcy under Chapter 13. *Id.* The seller asked for relief from the bankruptcy stay, arguing that the couple had lost its rights in the property before bankruptcy. *Id.*

The court disagreed, denying the seller relief. It did not deal with the absence of a foreclosure sale for installment contracts. Instead, the bankruptcy judge held, any breach after judgment "[could] be cured" by § 1322, because the couple's "possessory interest [was] sufficient." *Id.* at 846–47. In support, the opinion cited *In re Atlantic Business & Community Corp.*, 901 F.2d 325 (3d Cir. 1990). There, we held that a tenant-at-sufferance's possessory interest was enough to invoke bankruptcy protection. *Id.* at 328.

The bankruptcy court here relied on *Grove* to let Peralta cure his breach. But *Grove* is not good law, and future bankruptcy courts should not rely on it.

For one, *Grove* does not grapple with the text of § 1322(c)(1). It never explains what "foreclosure sale" means for an installment contract. *See* 208 B.R. at 847.

Next, *Grove* relies on a distinguishable case, *Atlantic Business*. Although that case involved a tenancy-at-sufferance, the landlord did not try to evict the tenant until two years *after* he

8

filed for bankruptcy. *In re Atl. Bus.*, 901 F.2d at 326. So when he filed for bankruptcy, the "debtor was effectively in possession … *with* [*the landlord's*] *permission*, and therefore had an interest in property protected by" a different provision of the Bankruptcy Code. *Id.* at 328 (emphasis added); *see also In re St. Clair*, 251 B.R. 660, 667–68 (D.N.J. 2000) (reading *Atlantic Business* thus), *aff'd sub nom. St. Clair v. Wood*, 281 F.3d 224 (3d Cir. 2001). But both in *Grove* and here, the homebuyers overstayed *without* permission. *Grove*, 208 B.R. at 846 (ejectment action).

Plus, *Grove*'s rule is unworkable. Mere possession would let squatters who never paid anything get bankruptcy relief. *Cf. In re Turner*, 326 B.R. 563, 573 (Bankr. W.D. Pa. 2005). Yet bankruptcy courts "routinely" hold that only "possession accompanied by other interests in property is protected by [bankruptcy]." *In re Glob. Outreach, S.A.*, 2009 WL 1606769, at *8 (Bankr. D.N.J. June 8, 2009); *see, e.g.*, *In re St. Clair*, 251 B.R. at 666 (requiring a "good-faith, colorable claim to possession").

So *Grove* does not guide us and should not guide future bankruptcy cases. We hold that a debtor's mere possession of a property, without a good-faith claim to it, does not save an installment contract for § 1322(c)(1) relief.

## C. Any Section 1322(c)(1) cure expired when judgment was entered

Now return to this case. Recall that after Peralta's first breach, he worked with Recon to revise his installment contract. Yet he stopped paying his bills, breaching again. The revised contract gave him several chances to right his wrongs,

9

but he did not. So Recon got a judgment for possession against him, ending any interest that he had.

Thus, when Peralta filed for bankruptcy months later, he had already lost his equitable interest in the house. The analogue of a foreclosure sale had passed, and it was too late to cure. And though he still lived there, he had no other good-faith claim to possession. So when he filed for bankruptcy, he had no property interest in his home, and it was not part of his bankruptcy estate. 11 U.S.C. § 541(a)(1).

\* \* \* \* \*

Peralta made most of the payments on his installment contract. But he missed some. He could have used the Bankruptcy Code to cure that breach, but only until judgment was entered against him. Because he filed for bankruptcy after that, the District Court got it right: Peralta's house is not part of his bankruptcy estate. We will affirm.

10